**Donald Glenn FELTS and Mary Taylor Felts, Petitioners,**

v.

**HARRIS COUNTY, Texas, Respondent.**

No. 94–1017.

Supreme Court of Texas.

Argued March 22, 1995.

Decided Jan. 18, 1996.

Rehearing Overruled March 7, 1996.

Billy Coe Dyer, Houston, for petitioners.

Jennifer L. Mouton, Mike Driscoll, Houston, for respondent.

ENOCH, Justice.

This is an inverse condemnation case which questions whether property owners have a right to compensation under Article I, Section 17 of the Texas Constitution for damage to their property resulting from roadway traffic noise. Because the Feltses have not established a constitutionally compensable damage, we affirm the judgment of the court of appeals, but for reasons different from those that court expressed.

In 1978, the Feltses purchased a half-acre lot in Cypress, Texas and built their home. Nine years later, Harris County decided to build North Eldridge Parkway, a four-lane "major thoroughfare" that ran adjacent to the Feltses' property line. Harris County projected that the Parkway would carry 14,-338 cars per day when it opened and 24,100 cars per day by the year 2007. Shortly after the County made its decision public, the Feltses put their home on the market asking $165,000 and disclosing the Parkway's proposed location to all prospective buyers. They eventually sold their home in September 1990, during the construction of the Parkway but before it actually opened, for $119,500. The Feltses brought this action for inverse condemnation, seeking damages under Article I, Section 17 of the Texas Constitution, and for common-law nuisance.[1]

At trial, the Feltses called Bill Kvinta, an appraiser. Kvinta testified that the Feltses' property was worth $135,145 before the Parkway was built and that it was worth $115,405 in 1990 due to the Parkway's construction, a decrease of $19,740. His testimony was based on a "cost to cure" calculation: it would cost $19,740 to build a wall to block out the expected traffic noise from the Parkway.

The Feltses also called Steven Gee, an expert on traffic noise. Gee testified that before the construction, the noise level at the Feltses' property was 42 to 43 decibels. Using a computer program designed to project future noise levels, he calculated the noise levels expected after the construction—assuming 13,800 cars traveled the Parkway per day—to be 61 to 62 decibels at the Feltses' home and 67 decibels at their property line. A post-construction increase of 20 decibels would be approximately four times louder, thus qualifying as a "significant impact" under the Texas Department of Transportation Noise Guidelines.[2]

The case was submitted to a jury which found in favor of the Feltses. Harris County filed a motion for judgment notwithstanding the verdict arguing that: (1) the existence of constitutionally compensable damage to property is a question of law, but here there was no constitutionally compensable damage; (2) the Feltses' property suffered only community damages, which are not constitutionally compensable; and (3) the damage, if any, was not for a "public purpose."[3] The trial court overruled the motion and rendered judgment on the verdict. The trial court included its own finding in the judgment, which coincided with the jury's, that the Feltses' property had been damaged in the amount of $15,645 under Article I, Section 17 of the Texas Constitution.

1. The Feltses have since abandoned their common-law nuisance claim, but continue to pursue their inverse condemnation claim on the ground that the noise incident to the operation of Eldridge Parkway will substantially interfere with the use and enjoyment of their property.

2. The Texas Noise Guidelines are set forth in a public document and are developed by the Texas Department of Transportation. They are primarily for internal use by the Department but are available upon written request. This document is not in the record. However, both parties agree that these Guidelines indicate that a 10 decibel increase in noise is considered a "significant impact."

3. Harris County has abandoned its defense that the alleged "damaging" was not for a public purpose.

The court of appeals, in a divided opinion, reversed and rendered judgment for the County, holding that there had not been an inverse condemnation and that the trial court erred by overruling the County's motion for judgment notwithstanding the verdict. 881 S.W.2d 866, 869. The court of appeals held that the County must have physically appropriated or invaded the property for the Feltses to be entitled to damages under the Constitution. 881 S.W.2d at 869–70. The court of appeals did not reach the community damage issue.

## I. Texas Constitution Article I, Section 17

The Feltses contend that traffic noise will damage their property in a constitutional sense. Harris County responds to this claim by asserting that no constitutional damages are warranted unless the government makes a physical appropriation, denies access to property, or denies a permit for development. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 453 (Tex.1992). Because access and permitting are not issues in this case, the only means by which the Feltses may recover, the County argues, is by proving that a physical appropriation occurred. Traffic noise, although it has physical properties in a technical sense, does not, according to the County, physically appropriate property. Consequently, the Feltses cannot prove their entitlement to compensation. We disagree.

■ Article I, Section 17 of the Texas Constitution requires compensation if property is "taken, *damaged or destroyed* for or applied to public use without adequate compensation being made...." TEX. CONST. art. I, § 17 (emphasis added).[4] This phrase means that an actual taking or physical appropriation is not required. *State v. Biggar*, 873 S.W.2d 11, 13 (Tex.1994); *DuPuy v. City of Waco*, 396 S.W.2d 103, 106 (Tex.1965); *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731,

736 (1941). Therefore, the court of appeals erred by holding that the Feltses could recover only if there had been a physical appropriation. 881 S.W.2d at 869.

## II. Constitutional Damages

■ Recognizing that interference with private property short of physical appropriation may be compensable under our Constitution leads to the next issue. What damage is compensable? The Feltses argue that traffic noise will damage their property differently than it will other properties in their neighborhood. In response, Harris County asserts that the noise for which the Feltses seek damages are community in nature and, therefore, not compensable.

■ Although the Texas Constitution does not require a physical appropriation, neither does it require compensation for every decrease in market value attributed to a governmental activity. *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex.1993). Throughout its history, courts have construed Article I, Section 17 to allow recovery only if the injury is not one suffered by the community in general. As we explained in *G.C. & S.F. Ry. v. Fuller*:

> Every government has the power to construct or to cause to be constructed public works, and in so far as such construction works an injury to the public, it can give no one a right to a private action.

> A railway may be built in such relation to a prosperous town as practically to destroy the value of real estate in it, or in a part of it, and to destroy the business of its inhabitants, but if it be built in accordance with legislative permission, this would not entitle a person to maintain an action for loss resulting from the diminution in value of his property in the town or his loss of business.

---

4. Twenty-two other states have constitutional provisions providing for compensation when property is "damaged" as well as when it is taken. ALASKA CONST. art. I, § 18; ARIZ. CONST. art. II, § 17; CAL. CONST. art. I, § 19; COLO. CONST. art. II, § 15; GA. CONST. art. I, § 3; HAW. CONST. art I, § 20; ILL. CONST. art. I, § 15; LA. CONST. art. I, § 4; MINN. CONST. art. I, § 13; MISS. CONST. art. III, § 17; MO. CONST. art. I, § 26; MONT. CONST. art. II, § 29; NEB. CONST. art. I, § 21; N.M. CONST. art. II, § 20; N.D. CONST. art. I, § 16; OKLA. CONST. art. II, § 24; S.D. CONST. art. VI, § 13; UTAH CONST. art. I, § 22; VA. CONST. art. I, § 11; WASH. CONST. art. I, § 16; W.VA. CONST. art. III, § 9; WYO. CONST. art. I, § 33.

In reference to such things benefits will accrue to some communities and persons, and depreciation in values result to the property of others; but these neither entitle a public work to compensation for benefits conferred, nor render it liable for such losses as may be sustained....

63 Tex. 467, 470–71 (1885). We concluded that injuries to property received or sustained in common with the community in which the property is situated, and resulting from the operation of a public work, are community in nature. *Id.* at 473. Community damages are not connected with the landowner's use and enjoyment of property and give rise to no compensation. *Id.* This principle is a settled rule in our eminent domain jurisprudence and has been codified in section 21.042(d) of the Property Code. TEX. PROP.CODE § 21.042(d); *see also Schmidt,* 867 S.W.2d at 779–81; *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 201 (1936); *Gainesville, H. & W. R.R. v. Hall,* 78 Tex. 169, 14 S.W. 259, 259 (1890); *Texarkana & N.W. R.R. v. Goldberg,* 68 Tex. 685, 5 S.W. 824, 826 (1887).

■ However, the application of the community damage principle to roadway traffic noise is still to be decided. The only settled issue regarding noise and other annoyances attributable to highways is the non-recoverability of damages from noise, dust, increased traffic, and other inconveniences incident to the building of a highway. *Biggar,* 873 S.W.2d at 14; *Schmidt,* 867 S.W.2d at 775; *City of Austin v. Avenue Corp.,* 704 S.W.2d 11, 12 (Tex.1986); *L–M–S Inc. v. Blackwell,* 149 Tex. 348, 233 S.W.2d 286, 289 (1950). These temporary inconveniences are "incident to city life and must be endured." *Schmidt,* 867 S.W.2d at 775 (quoting *Avenue Corp.,* 704 S.W.2d at 12). Unlike the treatment of highway construction damages, this Court has not considered whether traffic noise from highway operation is constitutionally compensable.

Several courts of appeals have addressed the issue, with most holding that traffic noise damage is not constitutionally compensable because it is community in nature. *See, e.g., Olson v. Harris County,* 807 S.W.2d 594, 595 (Tex.App.—Houston [1st Dist.] 1990, writ de-

nied); *State v. South Main Baptist Church,* 361 S.W.2d 898, 901 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.); *Hall v. Wilbarger County,* 37 S.W.2d 1041, 1047 (Tex.Civ. App.—Amarillo 1931), *aff'd,* 55 S.W.2d 797 (Tex.Comm'n App.1932, judgm't adopted). *But see Hester v. State,* 497 S.W.2d 501, 504 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.).

■ We agree that, generally, noise emanating from a roadway has a similar impact on the community as a whole. That is, all properties surrounding a new roadway suffer some increase in traffic noise. Similar damages experienced by all or most of the properties in a given community or section is the quintessential notion of community damage. Those properties closer to the roadway may experience a greater increase than those further away. The fact that some damages may be greater if the property is in closer proximity to the roadway does not suffice to render such damages constitutionally compensable under Article I, Section 17. *Schmidt,* 867 S.W.2d at 781; *see also* Sackman & Rohan, NICHOLS, THE LAW OF EMINENT DOMAIN § 6.08[2], at 6–130 to 6–132 (3d ed. rev. 1994) ("If the damage suffered is of a type similar to that suffered by the public in general or by other neighboring landowners, even if different in degree, ... no compensation is required regardless of the severity of the injury sustained.").

The damages the Feltses expected to sustain are no different than those experienced by their neighbors. Although the Feltses and their experts attempted to characterize their expected damages as different, special, or peculiar, their basis for this characterization always turned on the noise *level* that would affect others' properties. Therefore, the damages the Feltses would have incurred from the traffic noise are community damages. *See Schmidt,* 867 S.W.2d at 779–81.

The Feltses respond by asserting that their damages are identical to those experienced by the owners of property fronting railroad tracks. In the historic railroad cases, most occurring prior to 1900, this Court held that damages resulting from noise, cinders, vibrations, and other attendant annoyances provided a basis for compen-

sation. *Hall,* 14 S.W. at 259; *Goldberg,* 5 S.W. at 826; *Fuller,* 63 Tex. at 472; *G.C. & Santa Fe R.R. v. Eddins,* 60 Tex. 656, 660 (1884).

However, in no case did this Court hold that noise alone was sufficient to justify compensation. For example, this Court noted in *G.C. & Santa Fe R.R. v. Eddins,* that "the increased exposure to fire by constructing and operating steam railways through streets near buildings and through fields is pertinent evidence, and ... show[s] damage by the depreciation in value of the property so exposed." 60 Tex. at 660. Therefore, these early decisions correctly concluded that damages affecting all landowners adjacent to railroad tracks were special. We further note that the cases involving airplane overhead flights are, likewise, distinguishable. These cases do not implicate the community damage principle because they involve the "taking" of air easements rather than interferences attributable to neighboring public works. *See, e.g., City of Houston v. McFadden,* 420 S.W.2d 811, 814 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). In this case, the record does not indicate that the Feltses' damages would be different in kind from that of any of their neighbors.[5]

### III. Conclusion

The Feltses would have only experienced noise that their neighbors would have also experienced after the County opened North Eldridge Parkway—noise no different than that incident to city life and experienced by the entire community. Therefore, we affirm the judgment of the court of appeals.

---

**5.** Despite our holding that the Feltses' damage is community damage, we are not prepared to conclude that damage attributable to traffic noise can never be compensable. *See City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176, 180 (1951) (damage to property adjacent to a new roadway may be different from that experienced by the community as a whole). Under exceptional circumstances, traffic noise may be so significant that it severely impairs the ownership interest in property.